UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Gonzalo R.I.,[1]

        Petitioner,               Case No. 26-cv-248 (MJD/LIB)

v.                                 **REPORT AND RECOMMENDATION**

Pamela Bondi, et al.,

        Respondents.

---

Pursuant to a general referral made in accordance with 28 U.S.C. § 636 and Local Rule 72.1, this matter comes before the undersigned United States Magistrate Judge upon Petitioner Gonzalo R.I.'s Petition for a writ of habeas corpus. [Docket No. 1]. Finding no hearing necessary, the Court issues the present Report and Recommendation.[2]

For the reasons discussed herein, the undersigned recommends that Petitioner Gonzalo R.I's Petition for a writ of habeas corpus, [Docket No. 1], be **GRANTED**, as set forth herein, and Respondents be ordered to release Petitioner within forty-eight hours of any Order adopting the present Report and Recommendation.

I.    **Background**

Petitioner is a native and citizen of Mexico. (See Petition [Docket No. 1] ¶¶ 27–30). Petitioner entered the United States without inspection in or around 2022. (Id.; Petitioner's Reply

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in immigration opinions such as the present Report and Recommendation. See, e.g., Yee S. v. Bondi, No. 25-cv-2782 (JMB/DLM), 2025 WL 2879479, at *1 n.1 (D. Minn. Oct. 9, 2025); Sarail A. v. Bondi, No. 25-cv-2144 (ECT/JFD), 2025 WL 2533673, at *1 n.1 (D. Minn. Sept. 3, 2025). Accordingly, where the Court refers to Petitioner by his name, only his first name and last initial are provided.

[2] Upon review of the present record, the Court finds that a hearing is unnecessary in this action because the relevant facts are not in dispute and because a hearing on the Petitioner's claims would not aid the Court in its consideration of the present Petition. See Wallace v. Lockhart, 701 F.2d 719, 730 (8th Cir. 1983) (observing that dismissal of a "habeas petition without a hearing is proper . . . where the allegations, even if true, fail to state a cognizable constitutional claim, where the relevant facts are not in dispute, or where the dispute can be resolved on the basis of the record").

[Docket No. 6] at 7). Since his entry into the United States, Petitioner has remained in the United States, and prior to his recent arrest, he was residing in Minnesota. (See Petition [Docket No. 1] ¶¶ 13, 28–33). During the time he has been residing in the United States, Petitioner filed a U visa application which remains pending with United States Citizenship and Immigration Services. (Id.).[3]

On January 11, 2026, Immigration and Customs Enforcement ("ICE") officers encountered Petitioner in Minnesota and arrested him. (Id.).[4] Petitioner remains in the custody of ICE and is being detained in Minnesota, although it is not known the precise facility in which Petitioner is detained. (Id.). At the time of his arrests, Petitioner was not the subject of removal proceedings, and it does not appear from the record that any such proceedings have been initiated. (Id.).

Petitioner initiated this habeas action on January 13, 2026, by filing his Petition. [Docket No. 1]. Petitioner argues that he is being unconstitutionally detained because Respondents have unlawfully subjected him to mandatory detention under 8 U.S.C. § 1225(b) without the

---

[3] "The U nonimmigrant status (U visa) is set aside for victims of certain crimes who have suffered mental or physical abuse and are helpful to law enforcement or government officials in the investigation or prosecution of criminal activity." Victor F.M. v. Bondi, No. 25-cv-4778 (ECT/SGE), 2026 WL 25968, at *1 n.2 (D. Minn. Jan. 5, 2026) (quoting *Victims of Criminal Activity: U Nonimmigrant Status*, U.S. Citizenship & Immigr. Servs. https://www.uscis.gov/humanitarian/victims-of-criminal-activity-u-nonimmigrant-status).

[4] When discussing the background and administrative history in an action such as the present case, the Court would typically provide citations to the operative habeas petition, the document evidence underlying the petitioner's arrest and detention, and any documents from the immigration-related proceedings. This, however, is not possible in the present case because Respondents failed to provide any such evidence. Respondents were ordered to file an answer to Petitioner's present Petition to include a reasoned memorandum of law and "[s]uch affidavits and exhibits as are needed to establish the lawfulness and correct duration of Petitioner's detention in light of the issues raised" in the present Petition. (Order [Docket No. 3]). Respondents failed to comply with the Court's direction. Respondent did not file any documentation evidence or affidavit providing any information regarding Petitioner's arrest, his detention, his present location, or even an affidavit acknowledging the facts of this case. Nevertheless, the Court finds that the present record is sufficient to resolve the issues raised in the present Petition. Given the need for Gonzalo R.I.'s Petition to be handled in an expedite basis, the Court does not here discuss whether sanctions are appropriate for Respondents failure to comply with the Court's January 14, 2026, Order, but the Court finds Respondents' conduct troubling.

possibility of a bond hearing. (See Id.).[5] Petitioner requests that this Court order his immediate release or in the alternative order Respondents to provide Petitioner with a bond hearing. (See Id. at Prayer for Relief ¶¶ 5–6; Petitioner's Reply [Docket No. 6]). Petitioner asserts that his immediate release is warranted because he was arrested and continues to be detained "without a warrant of arrest or apprehension." (See Petition [Docket No. 1] at Prayer for Relief ¶ 5).

## II. Discussion

"Habeas is at its core a remedy for unlawful executive detention." Munaf v. Geren, 553 U.S. 674, 693 (2008). To ensure that remedy remains available, district courts have been vested with the authority to grant writs of habeas corpus to any individual who demonstrates that they are being subjected to custodial confinement in violation of the Constitution, federal law, or a treaty of the United States. See, e.g., Rasul v. Bush, 542 U.S. 466, 473 (2004); 28 U.S.C. §§ 2241(a), 2241(c)(3). The district court's habeas jurisdiction includes the authority to adjudicate habeas challenges to a noncitizen individual's immigration-related detention. See, e.g., Zadvydas v. Davis, 533 U.S. 678, 687–88 (2001). "Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful." Abel Jimenez Jimenez v. Samuel J. Olson, No. 25-cv-189 (CJW/KEM), 2025 WL 3633609, at *2 (N.D. Iowa Dec. 15, 2025)

---

[5] From the record now before the Court, it does not appear that Petitioner had requested a bond hearing at the time he filed the present Petition. Indeed, the Petition was filed only two days after Petitioner was arrested. The Petitioner, however, initiated this proceeding based on Respondents categorical policy decision (discussed in more detail below) that individuals in immigration-related detention are not entitled to a bond hearing. Respondents do not argue that the present Petition is premature, and indeed, in the present action, Respondents continue to hold fast to their categorical policy decision. For the sake of completeness, the Court finds that the present Petition is not premature. It would serve no purpose to dismiss this action only to have Petitioner reraise the action after specifically requesting a bond hearing in immigration court when even here Respondents argue that the categorical policy decision is correct, despite hundreds of Courts across the country telling them otherwise. Moreover, Petitioner challenges not only Respondents decision that he is not entitled to a bond hearing but also the constitutionality his detention itself. Petitioner is presently detained, and thus, he may challenge the constitutionality of that detention. Other Courts have granted habeas relief in circumstances materially similar to the present case even when the petitioner had not requested a bond hearing in immigration court. See, e.g., Avila v. Bondi, No. 25-cv-3741 (JRT/SGE), 2025 WL 2976539 (D. Minn. Oct. 21, 2025).

(citing Aditya W. H. v. Trump, 782 F. Supp. 3d 691, 702 (D. Minn. 2025); Walker v. Johnston, 312 U.S. 275, 286 (1941)).

In the United States, immigration law permits "authorized immigration officials to detain some classes of aliens during the course of certain immigration proceedings." Jennings v. Rodriguez, 583 U.S. 281, 286 (2018). For example, "the Government" is authorized "to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." Id. at 289. Government officials are also authorized "to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." Id. Although both § 1225 and § 1226 authorize the detention of noncitizen individuals during the course of immigration proceedings, those provisions operate in substantially different manners. See Id. "Under 8 U.S.C. § 1225(b)(2), which applies to 'an alien seeking admission' to the United States, detention while immigration proceedings are conducted is mandatory," but "under 8 U.S.C. § 1226(a), which applies to an alien who is unlawfully present in the United States, detention is discretionary and may only be imposed after a hearing." Mahamed C.A. v. Noem, No. 25-cv-4551 (MJD/JFD), 2025 WL 3771299, at *1 (D. Minn. Dec. 16, 2025), report and recommendation adopted, 2025 WL 3754012 (D. Minn. Dec. 29, 2025).

For decades, the United States government treated individuals in Petitioner's circumstances as aliens unlawfully present in the United States who if arrested, were subject to discretionary detention pursuant to 8 U.S.C. § 1226. See, e.g., Eliseo A.A. v. Olson, No. 25-cv-3381 (JWB/DJF), 2025 WL 2886729, at *4 (D. Minn. Oct. 8, 2025).[6] Those individuals were entitled to a bond hearing. See, e.g., Jennings v. Rodriguez, 583 U.S. 281, 286–306 (2018).

---

[6] Detention under § 1226(a) is often referred to a discretionary detection. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." "As long as the detained alien is not covered by § 1226(c), the Attorney General 'may release' the alien on 'bond . . . or conditional parole.' Federal regulations provide that aliens

However, in December 2025, the government made an abrupt change of course. Respondents now argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225[7] pursuant to recent guidance by the Board of Immigration Appeals finding that all aliens present in the United States without proper authorization are subject to mandatory detention under § 1225.[8]

The present Petition and the arguments raised by both sides are substantively identical to the numerous other immigration-related habeas petitions filed in this District in which individuals argue that they are being unconstitutionally subjected to mandatory detention under § 1225. Respondents continue to raise the same argument despite the fact that their arguments have been soundly rejected by nearly every Court which has substantively considered the argument, including the undersigned and every district judge in this District who has substantively considered the issue. See, e.g., Jessica C. v. Bondi, No. 26-cv-85 (ECT/LIB), 2026 WL 114290, at *2 (D. Minn. Jan. 15, 2026); Fuentes v. Olson, No. 25-cv-4456 (LMP/ECW), 2025 WL 3524455, at *1–3 (D. Minn. Dec. 9, 2025) (Provinzino, J.) (collecting cases); Jose J.O.E. v. Bondi, 797 F. Supp. 3d 957, 968–70 (D. Minn. 2025); Ramon R.C. v. Samuel J. Olson, No. 25-cv-3811 (ECT/LIB), 2025 WL 3900425, at *5–8 (D. Minn. Dec. 30, 2025), report and

---

detained under § 1226(a) receive bond hearings at the outset of detention." Jennings, 583 U.S. at 306 (citations omitted) (ellipses in original).

[7] Detention under § 1225 is often referred to as mandatory detention. Section 1225 applies to "[a]n alien present in the United States who has not been admitted or who arrives in the United States []whether or not at a designated port of arrival," and all such individuals are deemed for purposes of § 1225 to be "an applicant for admission." § 1225(a)(1). "As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." Jennings, 583 U.S. at 287. Unlike § 1226, "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings." Id. at 297. "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," and these individuals are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." Id. "Section 1225(b)(2) is broader" operating "as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." Id. Individuals covered by § 1225(b)(2) "'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country." Id. (quoting § 1225(b)(2)(A)) (brackets in Jennings).

[8] The BIA's decision appears to be a consequence of a July 2025 policy announcement by ICE and the Department of Homeland Security providing similar guidance. See Mahamed C.A., 2025 WL 3771299, at *2 (citing Santos M.C. v. Olson, No. 25-cv-4264 (PJS/DJF), 2025 WL 3281787, at *2 (D. Minn. Nov. 25, 2025)).

5

recommendation adopted, 2026 WL 45113 (D. Minn. Jan. 7, 2026); Barco Mercado v. Francis, No. 25-cv-6582 (LAK), ___ F. Supp. 3d ___, 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025); Victor F.M. v. Bondi, No. 25-cv-4778 (ECT/SGE), 2026 WL 25968, at *2 (D. Minn. Jan. 5, 2026); Santos M.C. v. Olson, No. 25-cv-4264 (PJS/DJF), 2025 WL 3281787, at *2–3 (D. Minn. Nov. 25, 2025) (Schilz, C.J.); Andres R.E. v. Bondi, No. 25-cv-3946 (NEB/DLM), 2025 WL 3146312, at *3 (D. Minn. Nov. 4, 2025) (Brasel, J.); Belsai D.S. v. Bondi, No. 25-cv-3682 (KMM/EMB), ___ F. Supp. 3d ___, 2025 WL 2802947, at *5 (D. Minn. Oct. 1, 2025) (Menendez, J.); Eliseo A.A. v. Olson, No. 25-cv-3381 (JWB/DJF), ___ F. Supp. 3d ___, 2025 WL 2886729, at *4 (D. Minn. Oct. 8, 2025) (Blackwell, J); Francisco T. v. Bondi, No. 25-cv-03219 (JMB/DTS), 2025 WL 3236513, at *3 (D. Minn. Nov. 19, 2025) (Bryan, J.); Avila v. Bondi, No. 25-cv-3741 (JRT/SGE), 2025 WL 2976539, at *6 (D. Minn. Oct. 21, 2025) (Tunheim, J.); E.M. v. Noem, No. 25-cv-3975 (SRN/DTS), 2025 WL 3157839, at *4–6 (D. Minn. Nov. 12, 2025) (Nelson, J.); Ramirez Valverde v. Olson, No. 25-cv-1502, 2025 WL 3022700, at *3 (E.D. Wis. Oct. 29, 2025); J.A.M. v. Streeval, No. 25-cv-342 (CDL), 2025 WL 3050094, at *3 (M.D. Ga. Nov. 1, 2025); Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025); Maldonado v. Olson, 795 F. Supp. 3d 1134, 1151 (D. Minn. 2025).

The undersigned finds no reasons to depart from the judicial consensus discussed above. "For decades, the government took the position that people in Petitioner's situation were *not* subject to mandatory detention," Mahamed C.A., 2025 WL 3771299, at *2 (emphasis in original), and the government's new interpretation departs from decades of consistent statutory interpretation and the plain meaning of the relevant statutory text. There is simply no reasonable basis upon which this Court could conclude that Petitioner—who at the time of his arrest had

6

already been residing in the United States for at least three years—is an "alien seeking admission" subject to mandatory detention under § 1225(b)(2).[9]

Respondents argue that Petitioner's pending U visa application renders Petitioner an "alien seeking admission," and according to Respondents, he is thus subject to detention under § 1225. (Respondents Mem. [Docket No. 4] at 3, 7–8). Respondents are incorrect. See, e.g., Victor F.M. v. Bondi, No. 25-cv-4778 (ECT/SGE), 2026 WL 25968, at *2 (D. Minn. Jan. 5, 2026) (collecting cases); Mendoza Gutierrez v. Baltasar, No. 25-cv-2720 (RMR), 2025 WL 2962908, at *6 (D. Colo. Oct. 17, 2025); Reyes v. Noem, No. 1:25-cv-1614, 2026 WL 86808, at *1–3 (W.D. Mich. Jan. 12, 2026). Petitioner's pending application for a U visa does not render him an "alien seeking admission" subject to mandatory detention under § 1225.[10]

In summation, Petitioner is not subject to § 1225(b)'s mandatory detention regime. Petitioner is thus entitled to habeas relief in the present proceedings.

---

[9] "As other courts have observed, the use of the verb 'seeking' in § 1225(b)(2)(A) denotes an active and present effort, such that an alien seeking admission is a noncitizen who, at the time of his arrest, is actively and presently pursuing inspection and authorization by an immigration officer to lawfully enter the United States." E.M., 2025 WL 3157839, at *4 (cleaned up) (quoting Ramirez Valverde v. Olson, No. 25-cv-1502, 2025 WL 3022700, at *3 (E.D. Wis. Oct. 29, 2025)). "'Seek' is an active verb, not a type of status that narrows the meaning of alien to one who is attempting to obtain lawful admission to the United States." E.M., 2025 WL 3157839, at *4 (cleaned up) (quoting J.A.M. v. Streeval, No. 25-cv-342 (CDL), 2025 WL 3050094, at *3 (M.D. Ga. Nov. 1, 2025)). As another Court analogized, "someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there." Santos M.C., 2025 WL 3281787, at *3 (quoting Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025)). "Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as 'seeking admission' (or 'seeking' 'lawful entry') at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there." Lopez Benitez, 795 F. Supp. 3d at 489.

[10] In support of the argument that Petitioner's pending application for a U visa renders him an "alien seeking admission," Respondents analogize this case to a single case from the Southern District of New York, Chen v. Almodovar, No. 25-cv-8350, 2025 WL 3484855 (S.D.N.Y. Dec. 4, 2025). Chen is, however, not persuasive. Indeed, Chen has been repeatedly rejected by Courts across the nation, Courts in this District, and Courts within the Southern District of New York itself. See, e.g., Mahamed C.A., 2025 WL 3771299, at *2 (collecting cases); Goorakani v. Lyons, No. 25-cv-9456 (DEH), 2025 WL 3632896, at *8–12 (S.D.N.Y. Dec. 15, 2025). "Since Chen was decided, no judge in the Southern District of New York, or the Second Circuit more broadly, has followed it, and those [across the nation] who have discussed it have declined to follow it." Mahamed C.A., 2025 WL 3771299, at *3 (collecting cases).

7

The question remains as to the form of that relief. As his primary form of relief, Petitioner seeks his release from custody.

Respondents generically argue that if the Court determines that Petitioner is not subject to detention under § 1225, then the proper form of remedy is to order Respondents to provide Petitioner with a bond hearing as required under § 1226. Respondents do not provide any argument or counter-assertion regarding Petitioner's claim that his detention itself is unconstitutional because there is no lawful basis for his arrest or detention.

Respondents' argument in favor of a bond hearing rather than release is unpersuasive because it is predicated on the false assumption that a finding that Petitioner is not subject to detention under § 1225 necessarily means that Petitioner is subject to detention under § 1226. Respondents are incorrect. Instead, detention under § 1226 is only possible if the statutory requirements on § 1226 are met. As will be discussed in more detail, Respondents have failed to demonstrate that Petitioner is subject to detention under § 1226 or any other statutory provision. Thus, Petitioner is entitled to release.

In the present case, Respondents do not provide any evidence demonstrating that Petitioner's January 11, 2026, arrest or his subsequent detention were the result of a warrant. Nowhere in the record do Respondents proffer a basis for Petitioner's January 11, 2026, arrest or his subsequent detention other than § 1225's mandatory detention provision.

Unlike mandatory detention under § 1225, detention under § 1226 is predicated on the issuance of a warrant. See, e.g., 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."); Ahmed M. v. Bondi, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) (collecting cases and discussing warrant requirement found

8

in § 1226); Diego L. v. Bondi, No. 26-cv-382 (JMB/DJF), 2026 WL 145206, at *3 (D. Minn. Jan. 20, 2026) (collecting cases); Luis N. v. Bondi, No. 26-cv-226 (JMB/DLM), 2026 WL 115070, at *3 (D. Minn. Jan. 15, 2026). Absent a warrant an individual may not be arrested or detained under § 1226. See Ahmed M., 2026 WL 25627, at *3; Juan S.R. v. Bondi, 26-cv-5 (PJS/LIB), Order [Docket No. 8] (D. Minn. Jan. 12, 2026) (citing Ahmed M. and agreeing with the rationale therein); Diego L., 2026 WL 145206, at *3.

Where there exists no authority upon which an individual is detained, "ordering a bond hearing would treat the absence of statutory" authority in support of the individual's arrest or detention "as a mere procedural irregularity rather than a substantive defect. Habeas relief requires more because it addresses the lawfulness of custody itself, not the adequacy of procedures that might attend some other, uninvoked challenge to detention." Vedat C. v. Bondi, No. 25-cv-4642 (JWB/DTS), Order [Docket No. 9] at 6 (D. Minn. Dec. 19, 2025); see Ahmed M., 2026 WL 25627, at *3. "Where the record shows Respondents have not identified a valid statutory basis for detention in the first place, the remedy is not to supply one through further proceedings." Ahmed M., 2026 WL 25627, at *3 (quoting Vedat C. v. Bondi, No. 25-cv-4642 (JWB/DTS), Order [Docket No. 9] at 6 (D. Minn. Dec. 19, 2025)); see, e.g., Luis N., 2026 WL 115070, at *3; Diego L., 2026 WL 145206, at *3. Simply put, "[f]or detention that lacks a lawful predicate," such as Petitioner's detention in the present case, "release is an available and appropriate remedy." Vedat C. v. Bondi, No. 25-cv-4642 (JWB/DTS), Order [Docket No. 9] at 6 (D. Minn. Dec. 19, 2025); see Ahmed M., 2026 WL 25627, at *3; Luis N., 2026 WL 115070, at *3; Diego L., 2026 WL 145206, at *3.

In the present case, Respondents have wholly failed to identify any valid statutory basis for Petitioner's arrest or his present detention. Thus, Petitioner's detention is unlawful, and he is

entitled to immediate release from said detention. See, e.g., Lauro M. v. Bondi, No. 26-cv-134 (SRN/DJF), 2026 WL 115022, at *3 (D. Minn. Jan. 15, 2026); Ahmed M., 2026 WL 25627, at *3; Juan S.R. v. Bondi, 26-cv-5 (PJS/LIB), Order [Docket No. 8] (D. Minn. Jan. 12, 2026); Garrison G. v. Bondi, No. 26-cv-172 (JMB/DJF), 2026 WL 115026, at *4 (D. Minn. Jan. 15, 2026); Luis N., 2026 WL 115070, at *3; Guadarrama Ayala v. Henkey, No. 25-cv-682 (AKB), 2025 WL 3754138, at *6 (D. Idaho Dec. 29, 2025); J.A.C.P. v. Wofford, No. 25-cv-1354 (KES/SKO) (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025); Lepe v. Andrews, 801 F. Supp. 3d 1104, 1119 (E.D. Cal. 2025); Martinez v. Hyde, 792 F. Supp. 3d 211, 223 n.23 (D. Mass. 2025); Membreno v. Thompson, No. 25-CA-1845-XR, 2026 WL 93980, at *5 (W.D. Tex. Jan. 7, 2026); Diego L., 2026 WL 145206, at *3.[11] On that basis, the undersigned recommends that Respondents be ordered to immediately release Petitioner following the issuance of any Order adopting the present Report and Recommendation, and the undersigned further recommends that Respondents be required to confirm Petitioner's release within forty-eight hours of any Order adopting this Report and Recommendation.[12]

### III. Objection Period

The undersigned notes that one last issue merits discussion—the time in which the parties are permitted to object to the present Report and Recommendation, if they so choose. This Report and Recommendation is not an Order or judgment of the District Court, and it is, therefore, not appealable directly to the Eighth Circuit Court of Appeals. Instead, Local Rule

---

[11] Because the Court concludes that Petitioner is entitled to relief on that basis, the Court does not address Petitioner other arguments.

[12] Moreover, on the record now before the Court, Respondents have failed to demonstrate the Petitioner could even be subject to detention under § 1226(a). The plain text of § 1226 provides that an individual may be detained pending removal proceedings, but Respondents have failed to proffer any assertion, much less any evidence, that removal proceedings have been initiated against Petitioner or that those proceedings, if initiated, remain ongoing. Indeed, Petitioner specifically asserts that he was not subject to removal proceedings under 8 U.S.C. § 1229a at the time of his arrest, (Petition [Docket No. 1] ¶ 32), and Respondents does not contest that assertion. If Petitioner is not subject to removal proceedings, then he cannot be detained under § 1226.

72.2(b)(1) provides that "[a] party may file and serve specific written objections to a magistrate judge's" Report and Recommendation, such as the present Report and Recommendation, "within 14 days after being served with a copy of the" Report and Recommendation, "unless the court sets a different deadline." LR 72.2(b)(1). A party may then respond to those objections within fourteen days after being served a copy of the objections. LR 72.2(b)(2). Thus, under normal circumstances a party would be permitted fourteen (14) days in which to file its objections to the present Report and Recommendation, if it chooses to object, and then the opposing party would be permitted an additional fourteen (14) days in which to file its response to said object, if it so chooses.

In the present case, however, Petitioner's unlawful detention would be unnecessarily further prolonged by this objection period to the point that the time limit in which the undersigned recommends Petitioner be released would be doubled fourteen times over by the end of the standard objection period. Put differently, if the parties were permitted the full objection period, comprised of twenty-eight days, then the relief recommended by the undersigned would be materially diminished because Petitioner would have been unlawfully detained for an additional month or more.

Therefore, the Court, in its inherent power to manage pending litigation, reduces the time in which any party is permitted to object to the present Report and Recommendation to two (2) days, and corresponding, the Court reduces to one (1) day the time in which any party is permitted to respond to any objection. An objection period of any longer duration would materially and unnecessarily undermine the recommended relief.

## IV. Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Gonzalo R.I.'s Petition for a writ of habeas corpus, [Docket No. 1], be **GRANTED in part**, as set forth herein;

2. Respondents be required to immediately release Petitioner from custody;

3. Respondents be required to confirm Petitioner's release from custody with forty-eight (48) hours from the date of any Order adopting the present Report and Recommendation; and

4. Respondents be precluded from re-detaining Petitioner under a statutory theory this Court has rejected in this proceeding absent materially changed circumstances.

Dated: January 21, 2026

s/Leo I. Brisbois
Hon. Leo I. Brisbois
U.S. MAGISTRATE JUDGE